# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DYHAN SLAUGHER,<br><br>                Plaintiff,<br><br>    v.<br><br>WINSTON & STRAWN LLP,<br><br>                Defendant. | Case No. 15 C 5851<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendant Winston & Strawn, LLP ("W&S") moves for summary judgment on all three of Plaintiff Dyhan Slaughter's ("Slaughter") now-pending disability discrimination claims. For the reasons stated herein, the Motion is granted in full.

## I. BACKGROUND

Slaughter, who suffers from epilepsy and progressive hearing loss disorder, has worked as a legal secretary for W&S since 1998. In 2015, she filed this lawsuit against W&S, asserting a litany of disability-discrimination allegations. Judge Der-Yeghiayan dismissed four of Plaintiff's seven claims, leaving behind three claims predicated upon the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*: Count I, for retaliation after Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission; Count II, for discriminatorily

denying Plaintiff compensation; and Count III, for failing to provide Plaintiff reasonable accommodations. Judge Der-Yeghiayan retired, and this Court inherited the case. Defendant has moved for summary judgment on the remaining claims.

Slaughter's first two claims essentially complain of the same alleged conduct, namely that in 2014, W&S issued her a written warning requiring her to demonstrate immediate improvement in her communication and conduct with team members, and then, purportedly on the basis of having issued that warning, W&S refused Slaughter a 2014 bonus and likewise reduced the raise she received that year. (Resps. to Statements of Fact ¶¶ 43-44, 48, Dkt. 99.) W&S maintains these actions accord with its policies and its treatment of other, non-disabled secretaries. Slaughter maintains these actions are discriminatory and/or evince W&S's retaliation against her for filing EEOC charges against W&S.

This is the Court's second summary judgment ruling on discrimination claims levied by Slaughter against W&S. The first issued a month ago in a related case involving the same alleged conduct and similar, if not overlapping, allegations. (*See, Slaughter v. Winston & Strawn*, No. 16 C 4451, Dkt. 102.) In that ruling, the Court granted W&S summary judgment on all claims on the grounds that Slaughter had utterly failed to abide by Local Rule 56.1, a failure which effectively surrendered her opposition

to the Defendant's statement of material facts. (*See, id.*) With all of the Defendant's facts deemed admitted, Slaughter's Complaint was left without a leg to stand on. A similar failure haunts Slaughter here.

## II. <u>ANALYSIS</u>

On a summary judgment motion, the movant bears the burden of establishing that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010). The Court construes facts favorably to the nonmoving party and grants the nonmoving party all reasonable inferences in its favor. *Bagley v. Blagojevich*, 646 F.3d 378, 388 (7th Cir. 2011) (quoting *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010)).

### A. Timeliness of Allegations

First, some of the allegations in Counts I and II are untimely and thus barred. In Illinois, an employee may sue under the ADA only if she files a charge of discrimination with the EEOC within 300 days of the alleged "unlawful employment practice." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (quoting *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir. 1992)). That clock starts to run when the allegedly discriminatory conduct occurs and is communicated to the eventual

plaintiff, not when the effects of that conduct or decision are actually felt. *See, Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub L. No. 111-2, 123 Stat. 5, *on other grounds*. Further, each alleged incident of discrimination constitutes a separate actionable "unlawful employment practice" which starts a new, and separate, 300-day clock. *See, Smuk v. Specialty Foods Grp., Inc.*, No. 13 CV 8282, 2016 WL 3742849, at *8 (N.D. Ill. July 13, 2016) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

In all, Slaughter filed two EEOC charges against W&S: One on November 8, 2013, and one on April 2, 2015. (Resps. to SOF ¶¶ 14, 18, Dkt. 99.) Plaintiff's contention that she actually filed the second charge on March 25, 2015 is incorrect. The charge itself shows that the EEOC did not receive it until April 2nd. (*See,* Dkt. 1-2; *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009) (reciting applicable regulation stating that a charge "is deemed to be filed with the [EEOC] *upon receipt*") (quoting 29 C.F.R. § 1601.13(a)(4)(ii)(A)).) To any extent, Slaughter received a right-to-sue letter on the first charge but allowed it to lapse, after 90 days, without filing suit. (Resps. to SOF ¶¶ 15-16.) As such, this suit arises solely from her second EEOC charge. (*Id.* ¶ 18.) That charge, dated April 2, 2015,

accounts only for those alleged discriminatory actions that occurred on or after June 6, 2014—300 days prior. (*Id.*)  This renders two of Plaintiff's allegations untimely and thus barred, namely: the written warning she received on May 2, 2014, which she alleges to be both retaliation for filing the earlier EEOC claim and an independent act of discrimination, and Defendant's decision, of which Plaintiff was notified on May 8, 2014, that she would not receive a bonus that year.  (*Id.* ¶ 43; *see, Flannery*, 354 F.3d at 637.)

### B.  Disability Discrimination and Retaliation (Counts I & II)

In the wake of the Seventh Circuit's opinion in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016), the so-called *McDonnell Douglas* framework remains a valid, though nonexclusive, method for courts analyzing discrimination claims. *See, Nance v. NBCUniversal Media, LLC*, No. 16-11635, 2018 WL 1762440, at *4 (N.D. Ill. Apr. 12, 2018); *see also, Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) (applying *McDonnell Douglas* framework to ADA claim); *cf. Ortiz*, 834 F.3d at 763-64 (reciting that the simpler inquiry focuses on whether the plaintiff would have suffered the adverse employment action had she not been a member of the protected class).  Under this framework, Slaughter's disability discrimination claim cannot

proceed unless she establishes a *prima facie* case showing that (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside the protected class. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002) (citations omitted). If the plaintiff succeeds in establishing the *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Bunn*, 753 F.3d at 685. Finally, if the employer produces a legitimate reason, the burden shifts once more to the plaintiff to prove that the stated reason is merely pretextual. *Id.* In this case, there is no need for the Court to proceed past step one. Slaughter fails to establish the second and fourth elements of the *prima facie* case, so her discrimination claim fails and W&S is entitled to summary judgment.

The following are the facts as represented by W&S. Except where noted, Plaintiff does not materially dispute any of the following with proper citations to the record or other support of her own. Local Rule 56.1. W&S contends that in 2014, written employee peer feedback factored into decisions regarding the following year's compensation. (Resps. to SOF ¶ 36.) Those secretaries receiving composite scores lower than 75% received a

written warning and were denied a bonus. (*See, id.* ¶¶ 43, 46; Weingarten Decl. ¶ 28, Dkt. 92-3.) That year, five other W&S secretaries completed such evaluations of Plaintiff, scoring her performance in various categories on a scale from 1 to 4 (the higher end of the scale reflecting superior, and thus preferred, performance). (*Id.* ¶¶ 39-40.) Slaughter received mostly scores of 1s and 2s from her fellow secretaries, resulting in an overall score of 61%. (*Id.* ¶ 41.) The Plaintiff rebuts that such evidence was "cherry-picked," and contends that her reviews were actually positive overall. (*Id.*) She cites only to the reviews themselves as proof, yet those reviews belie her characterization and fully support Defendant's. (*See,* Dkt. 98-5 (showing Slaughter received more scores of 1 or 2 than 3 or 4, and she did not receive a score of 4 from any respondent under any performance category).) Slaughter also contends without any substantiation that those negative reviews were somehow fabricated. This is sheer conjecture unsupported by any fact or inference, and such speculation does not advance her claims. *See, Payne v. Pauly*, 337 F.3d 767, 773 (7th Cir. 2003) (stating that "[c]onclusory allegations, unsupported by specific facts, will not suffice" to demonstrate a genuine issue for trial) (citations omitted).

Slaughter also complains she did not receive a raise commensurate with her performance and that the disparity owes to

her disabilities. The parties agree that in 2014, Slaughter received a $1,500 raise and that the two other secretaries who, like Slaughter, were given written warnings that year received even lower raises than she—$1,400 and $1,300, respectively. (Resps. to SOF ¶ 48.) Slaughter maintains that Defendant's explanations for the lower-than-preferred raise are pretextual. The reason cannot be her poor reviews, she says, because W&S explained to her via email that the reduction actually owed to her salary approaching the W&S $77,100 salary cap for secretaries. Slaughter then rounds out her assault on W&S's "pretext" by explaining that because her salary in 2014 was $6,000 below that cap, the cap was not near enough to her salary to cause the reduction. According to Slaughter, stripping W&S of that excuse reveals the true motivation behind the compensation decisions: disability-based animus.

Clearly there are pieces missing from this chain of logic. First off, it is unclear if the salary-cap email to which Slaughter refers is what she says it is: The email is addressed not to Slaughter personally but rather to "Secretaries CF," and W&S explains (although in reply briefing only) that this email was directed to all secretaries for general consumption and was not directed to Slaughter individually nor intended as an explanation for her particular raise amount. (*See,* Salary Cap Email, Dkt. 98-

7; Reply at 9-10, Dkt. 105.) Regardless, this dispute is not material. To win her disability discrimination claim, Slaughter must show that she received different treatment than other, similarly situated employees who are not disabled. *See, Bunn*, 753 F.3d at 685. She has failed in this regard. Though she generically challenges the true impetus behind W&S's decision to reduce her 2014 raise award, she fails to rebut materially W&S's assertion that two other, non-disabled secretaries received written warnings in 2014 and, as a result, also saw their raises diminished. (Resps. to SOF ¶¶ 43-46.) Applying *Ortiz*'s simpler formulation does not change this outcome; according to the evidence and those facts deemed admitted, Slaughter would have received the diminished raise even if she were not disabled. *See, Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

This result also dooms Slaughter's retaliation claim, under which she alleges that W&S reduced her raise, slashed her bonus, and issued her the aforementioned written warning all as retaliation for filing her EEOC charge. But as recited above, the record eradicates the requisite causal link between the charge and any of these later-occurring incidents. *See, Boss v. Castro*, 816 F.3d 910, 918 (7th Cir 2016) (citations omitted). Non-disabled secretaries with similarly low peer reviews faced the same consequences, and none of these other secretaries are alleged to

have filed EEOC charges of their own.  Finally, the fact that these events happened to occur after Slaughter filed her EEOC charge cannot by itself save her claim. *See, id.* ("A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity.").

No reasonable jury could find for Slaughter on her discrimination or retaliation claims, so summary judgment must be awarded on those Counts in Defendant's favor. *See, Arce v. Chi. Transit Auth.*, No. 16-2882, 2018 WL 3013377, at *3 (7th Cir. June 15, 2018) (reciting summary judgment standard).

### B. Failure to Accommodate (Count III)

Lastly, Slaughter contends in Count III that W&S failed to comply with her requests for reasonable accommodations. In asserting a failure-to-accommodate claim under the ADA, a plaintiff has the burden of, first, demonstrating that: (1) she is a person with a disability as defined by the ADA; (2) the defendant knew about her disability; and (3) the plaintiff is otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation. *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001) (citation omitted). A plaintiff who clears this first hurdle must then show that her employer failed to provide a reasonable accommodation. *See, Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

Slaughter checks off the elements of the *prima facie* case but then stumbles at the final hurdle. She alleges that W&S failed to accommodate four disability requests, but the record does not bear this out. First, she contends that W&S outright rejected a July 2009 doctor's note requesting that Slaughter be provided a "less stressful work environment." (Resp. at 13, Dkt. 98.) Judge Der-Yeghiayan struck that allegation as untimely, however, and Slaughter has not pled any other facts to bring this alleged rejection within the applicable limitations period. (*See,* Mem. Op. & Order, Dkt. 30 at 8 (striking time-barred allegations).) Slaughter's second failure-to-accommodate allegation similarly fails: She claims W&S failed to accommodate her by transferring her desk's location multiple times, thus creating a stressful work environment; but Judge Der-Yeghiayan struck these allegations as well. (*Id.*) She now imputes an updated (and more recent) date to one such transfer, but that new date appears only in her opposition briefing and is nowhere supported by a citation to the record as required under Local Rule 56.1. It cannot stand.

There are two other at-issue requests for accommodation. The first came on February 24, 2014, when one of Plaintiff's physicians submitted a letter on her behalf asking that W&S excuse her from group evaluations. (Resps. to SOF ¶ 27.) Slaughter admits that W&S excused her from both group evaluations and one-on-one meetings

with management that year.  (*Id.* ¶ 28.)  The second of the remaining accommodation requests came on March 26, 2015, when another of Plaintiff's doctors provided, at W&S's request, a recommendation that Slaughter be allowed to opt out of future group evaluations.  (*Id.* ¶¶ 31-32.)  Again, W&S permitted Slaughter to pass on all group evaluations and one-on-one meetings with management that year.  (*Id.* ¶ 33.)  As a result of these requests, W&S has not required Slaughter to participate in any such in-person evaluations since 2013.  (*Id.* ¶ 34.)  Simply put, Slaughter admits that W&S provided her exactly the accommodations her requested.  There is thus no basis for Slaughter's failure to accommodate claims.  No evidence in the record supports them, and no inference in her favor props them up.

### III.  CONCLUSION

For the reasons stated herein, the Court grants summary judgment for Defendant Winston & Strawn on Counts I-III.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated:  7/12/2018